ANNETTE CARPENDER AND JACK CARPENDER, APPELLANTS, V.
RICHARD BENDORF, APPELLEE.

516 N.W.2d 619

Filed June 3, 1994.    No. S-92-375.

John M. DiMari, of Law Office of John M. DiMari, and
Thomas K. Harmon, of Respeliers and Harmon, P.C., for
appellants.

Larry E. Welch and Susan E. Norris, of Gross & Welch, P.C.,
for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE,
FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

GRANT, J., Retired.

This case arose out of an automobile-pedestrian accident
which occurred in Omaha, Nebraska, on May 27, 1987.
Plaintiff Annette Carpender (plaintiff) sued Peony Park, Inc.,
and Richard Bendorf (defendant) for injuries and damages she
received as a result of the accident. Her husband, Jack
Carpender, joined in the petition.

After answer, Peony Park filed its motion for summary

judgment, which was granted. The Carpenders did not appeal from that judgment, and Peony Park will not be further considered.

Defendant answered, generally denying the Carpenders' allegations as to how the accident happened and alleging that the proximate cause was the contributory negligence of plaintiff. Defendant then filed a motion for summary judgment, which was granted. The Carpenders timely appealed to the Nebraska Court of Appeals. Pursuant to Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992), we removed the appeal to this court to regulate the caseloads of the Nebraska appellate courts.

On appeal, plaintiff, in summary, assigns a single error: that the trial court erred in granting summary judgment in favor of defendant on the basis of determining that plaintiff was guilty, as a matter of law, of contributory negligence to such a degree as to bar recovery. We reverse and remand.

We first note that summary judgment, pursuant to Neb. Rev. Stat. § 25-1330 et seq. (Reissue 1989), is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from these facts and that the moving party is entitled to judgment as a matter of law. *Double K, Inc. v. Scottsdale Ins. Co.*, 245 Neb. 712, 515 N.W.2d 416 (1994).

In considering a motion for summary judgment, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving to that party the benefit of all inferences which may reasonably be drawn from the evidence. *Hines v. Pollock*, 229 Neb. 614, 428 N.W.2d 207 (1988).

Defendant's motion for summary judgment was submitted to the trial court on the depositions of plaintiff and defendant and four photographs of the intersection of Cass Street and 83d Street in Omaha where the accident occurred.

The photographs show that Cass Street, which runs east and west, consists of five lanes. Two lanes run east, two lanes run west, and one lane is in the middle and is referred to as a "storage" lane or left-turn lane. The storage lane was marked

with a solid yellow line on each side, with a broken yellow line within the southernmost solid yellow line. Each of the five lanes appears approximately the same width. The yellow lines run from the east to a point opposite a double yellow line running north on 83d Street, which is a two-lane street that extends north from Cass Street and widens to three lanes where 83d Street enters Cass Street at a slight northwest-southeast angle. To the west of the double yellow line on 83d Street, there are two lanes—one unmarked lane, apparently permitting right-turn or straight-ahead traffic (into the entrance to a parking lot where plaintiff parked) and the other, a left-turn lane that feeds into the eastbound lanes on Cass Street. The T-intersection is controlled by a stop sign on 83d Street. There are no marked pedestrian crosswalks at the intersection of Cass Street and 83d Street.

Plaintiff's deposition shows that she had parked her car in a parking lot that adjoins Cass Street on the south and lies just east of the intersection. Plaintiff approached Cass Street and stood on the south side of the street on the sidewalk at a point slightly east of a line representing a projection of the east line of 83d Street. She stated that she never crossed Cass Street east of where she stood on the day of the accident and that where she stood "always appeared to be a corner there to me, I mean, the corner." She waited for approximately 5 minutes for automobile traffic to clear. Traffic was heavy in both directions.

She saw defendant's pickup truck stopped on 83d Street, pointing south. At the time she did not realize that the lane in which defendant was stopped was the left-turn lane. Plaintiff stated that she saw no turn signal flashing on defendant's vehicle. Plaintiff testified she saw defendant's vehicle after she had been waiting about 2 minutes and that she started to cross Cass Street about 3 minutes later. She stated that as she stepped off the curb, she looked both east and west and saw that defendant's vehicle was still sitting at the stop sign. She did not see the vehicle moving before she was struck by the front end of defendant's vehicle at a point "about two foot inside the yellow line of the turning lane."

Defendant's deposition showed that defendant was on 83d

Street at the intersection and was waiting at the stop sign for "two to three minutes" for Cass Street traffic to clear. He stated he looked to the west, then "to the east till I crossed the westbound traffic lanes, and then I took a quick glance back over my shoulder to the west to see what was headed east, made sure nobody pulled out of any parking lot or driveways along the way." As he waited he did not see anyone on the south side of Cass and did not see plaintiff at any time before the impact and had no idea where she came from. He stated his left turn signal was on. He also stated that when he first saw her, plaintiff was "five to eight feet off the painted line that was there that was the center line." He then stated that there was not a centerline, but two lines that "have a distance between them, what would be like an island. I guess, painted." Defendant also said that the impact between his truck and plaintiff left a dent approximately in the center of the hood of the truck.

Neb. Rev. Stat. § 25-21,185 (Cum. Supp. 1992) provides, in pertinent part:

> In all actions accruing before February 8, 1992, brought to recover damages for injuries to a person or property caused by the negligence . . . of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence . . . of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff, and all questions of negligence . . . and contributory negligence shall be for the jury.

The immediate predecessor of this statute was § 25-1151, as transferred to § 25-21,185 in 1979. In *C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 747-48, 255 N.W.2d 272, 277 (1977), we said:

> "It should be noted here that the final provision of the comparative negligence statute requires that 'all questions of negligence and contributory negligence shall be for the jury.' While that language obviously does not affect the

court's right to decide a case as a matter of law, it does emphasize the fact that the determination of questions of negligence and contributory negligence and the comparative measuring of them are basically factual issues which are generally for determination by the jury." (Emphasis omitted.) See *Koerner v. Perrella*, 213 Neb. 189, 328 N.W.2d 473 (1982) (quoting *C. C. Natvig's Sons, Inc., supra*, with approval).

In his brief, defendant cites only one statute as applicable— Neb. Rev. Stat. § 39-643(1) (Reissue 1988). That statute provides: "Every pedestrian who crosses a roadway at any point other than within a marked crosswalk, or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway." Throughout his brief defendant states, as a fact, that plaintiff attempted to cross Cass Street between intersections, and he cites many cases concerning pedestrians crossing streets between intersections. For the purposes of the application of the summary judgment rule, defendant's position is not convincing. The record shows that plaintiff was crossing Cass Street in the proximity of 83d Street and Cass Street. The convergence of 83d Street and Cass Street is an "intersection," as that term is defined in Neb. Rev. Stat. § 39-602(37) (Cum. Supp. 1986), albeit a T-intersection.

It is true that plaintiff stated there was not a crosswalk where she crossed Cass Street. It is also true there was not a marked crosswalk. Plaintiff's conclusion was not based on any foundation shown in the record. The definition of an unmarked "crosswalk" is set out in Neb. Rev. Stat. § 39-602(13)(a) (Cum. Supp. 1986). The legal or factual applicability of the unmarked pedestrian crosswalk concept is not discussed in the briefs before us, nor in the record of the proceedings.

Defendant, in his answer, pled the contributory negligence of plaintiff. The trial court found that "the plaintiff was contributorily negligent in a degree more than slight as a matter of law." Contributory negligence is an affirmative defense which must be proved by the party asserting such defense. *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987); *Foland v. Malander*, 222 Neb. 1, 381 N.W.2d 914

(1986). There is nothing in the record as to whether plaintiff was in an unmarked crosswalk.

In addition, whether plaintiff's conduct as a pedestrian is appraised as requiring the application of the "pedestrian in a crosswalk" rule or not, other factual questions, militating against the application of summary judgment, exist. The record shows that before she started to cross Cass Street, plaintiff saw defendant's truck, and that as she stepped into Cass Street, she saw defendant's truck—motionless at the stop sign at 83d Street. Plaintiff stated defendant's left turn signal was not on.

In spite of the obvious fact that defendant saw clearly to the south, he did not see plaintiff waiting to cross Cass Street, did not see plaintiff enter Cass Street, did not see plaintiff cross the two eastbound lanes of Cass Street, and did not see plaintiff reach a point inside the two yellow lines delineating the left-turn lane in the middle of Cass Street. Defendant did not see plaintiff until "she was right there in front of me." The front of defendant's vehicle struck plaintiff, leaving a dent approximately in the middle of the vehicle's hood.

Neb. Rev. Stat. § 39-644 (Reissue 1988) provides: "Notwithstanding the other provisions of sections 39-601 to 39-6,122, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give an audible signal when necessary . . . ."

Plaintiff's testimony in the record before us, which must be accepted as factual in the present posture of the case, precludes the issuance of summary judgment. According to plaintiff's testimony, when she was struck she was in a position inside painted yellow lines, outlining what defendant called a "painted island." Another vehicle standing in that lane would be legally protected from a collision caused by defendant. The trial court was in error, in this controverted factual situation, to grant summary judgment to defendant.

REVERSED AND REMANDED.